### WASHINGTON v. STOVER et al.

No. 22564.   Oct. 2, 1934.

Britton H. Tabor, for plaintiff in error.

Clark & Jack Nichols and Wm. F. Newbold, Jr., for defendant in error.

PER CURIAM. The undisputed facts in this case disclose that one Mary Washington, enrolled as a full-blood Creek Indian, died in McIntosh county, Okla., November 27, 1922. She left surviving as her sole and only heirs, her husband, Wallace Washington, plaintiff in error, a brother, Martin Simmons, and a half-sister, Susan Harjo, the husband being a white man, and the brother and sister restricted Creek Indians. That some time after the death of Mary Washington, Susan Harjo instituted an action in the county court of McIntosh county, Okla., for the purpose of determining the question of fact as to who were the heirs of Mary Washington. Service by publication only was had upon the unknown heirs of Mary Washington, and Wallace Washington had no actual notice or knowledge that the action had been filed until more than six months after the decree was entered. The county court determined that Susan Harjo was a sister, that Martin Simmons was a brother, and Willie Bruner was the husband of the allottee, and that these three were the sole heirs of the allottee. It is agreed that the proceedings in the county court were regular, that no fraud was perpetrated, and that the notice by publication complied with the law. The only question presented by the brief of plaintiff in error is as follows:

"That, although the trial court found plaintiff was lawful husband and heir of allottee at time of her death, the court erred in holding as a matter of law that the determination of heirship proceeding had in the county court barred plaintiff from his inheritance, because the plaintiff is a nonrestricted heir of deceased allottee."

Plaintiff in error takes the position that the Act of Congress approved June 14, 1918 (40 Stat. L. 606; 25 U. S. C. A. sec. 375), confers jurisdiction upon the county courts to determine the question of fact as to who are the heirs of deceased Indian allottees,

members of the Five Civilized Tribes, where the heirs are **all restricted Indians**, but says that such is not the case where any of the heirs are unrestricted, and to do so hold would be unconstitutional, being in contravention of section 12, article 7, of the Constitution.

The act reads as follows:

"A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally: Provided, further, that where the time limited by the laws of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said courts, a petition may be filed therein having for its object a determination of such heirship, and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws; Provided, further, that said petition shall be verified, and in all cases arising hereunder service by publication may be had on all unknown heirs, the service to be in accordance with the method of serving nonresident defendants in civil suits in the district courts of said state; and if any person so served by publication does not appear and move to be heard within six months from the date of the final order, he shall be concluded equally with parties personally served or voluntarily appearing."

The identical question presented here apparently has not been determined either by this court or by the courts of the United States.

That Congress has plenary jurisdiction and control over the affairs of its Indian wards has been fully determined. Lone Wolf v. Hitchcock, 187 U. S. 565, 23 Sup. Ct. 216; Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578; Sperry Oil & Gas Co. v. Chisholm, 264 U. S. 488, 44 Sup. Ct. 372; Walker v. Brown, 43 Okla. 144, 141 P. 681; Molone v. Walmsley, 80 Okla. 181, 195 P. 484; State ex rel. Miller v. Huser, 76 Okla. 130,

184 P. 113, upheld the constitutionality of this act, and recognized the power of Congress to legislate for the restricted Indians.

In Owens v. Kitchens et al., 105 Okla. 88, 232 P. 797, the allottee left three restricted heirs, two of whom sold their interest to a third person, and in response to a question as to the power of the county court to determine the heirship, this court held:

"A person purchasing from an alleged restricted heir after the Act of Congress June 14, 1918, will be treated as having agreed that the county court may conclusively determine the heirship subject to appeal."

In Re Fulsom's Estate, 141 Okla. 300, 285 P. 13, petition was filed in the county court to determine the heirs of Louisa Fulsom. Notice by publication was properly given and a decree entered. More than six months, but within 12 months thereafter, Kagie Knight, nee Davis, and others filed in the action a petition to set aside the decree, alleging that they were the heirs of the allottee, and were only served by publication, having had no previous notice or knowledge of the institution of the action, and claimed that the petition was filed in time, because Senate Bill 69, ch. 25, S. L. 1919, fixing the procedure, extended the time provided by the act of Congress. But this court held:

"The Act of Congress of June 14, 1918 (25 USCA, sections 355, 375), providing for service by publication on unknown heirs in accordance with the method of serving nonresident defendants in civil suits in the district courts of this state, and that if any person so served by publication does not appear and move to be heard within six months from the date of the final order, he shall be concluded equally with parties personally served or voluntarily appearing, is mandatory and controlling, and the Legislature of this state had no power to enact a statute having the effect to extend the time beyond that fixed by Congress."

It is clear that Congress intended by the act in question to confer jurisdiction upon the county court to determine the question of fact as to who are the heirs under the following conditions:

(1) The deceased must be a citizen allottee of one of the Five Civilized Tribes.

(2) Such deceased allottee must leave restricted heirs.

(3) The question of the determination of heirship shall not have theretofore been ascertained by competent legal authority under existing laws.

It is not necessary that all the heirs be restricted. If this construction were placed

upon the act, it would tend to nullify it, because it makes provision for the determination of the "question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes," and also makes provision for service by publication on all "unknown heirs." In the case at bar, as in many other cases, there are unknown heirs who are unrestricted, and unless the court has jurisdiction over such heirs, it does not have power to determine the "question of fact as to who are the heirs of" the allottee.

It will be noted that the act provides:

"A determination of the question of fact as to **who are the** heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs * * * shall be conclusive of said question."

It also provided for service by publication on **"all unknown heirs."**

And **"If any person** so served by publication does not appear and move to be heard within six months from the date of the final order, he shall be concluded equally with parties personally served or voluntarily appearing."

In other words, the probate court is appointed as a federal agency to determine the question of fact as to who are the heirs, which determination shall be conclusive, not only as to known, but **all** unknown heirs. It further provides that **if any person**, and not any **restricted person**, fails to appear, he shall be concluded, etc.

If Congress had intended the act to have the narrow construction contended for by the plaintiff in error, it would have been necessary to add just one word, and the act would then have read:

A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the five Civilized Tribes of Indians who may die or may have heretofore died, "leaving **only** restricted heirs. * * *"

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. E. Williams, Stephen A. George, and Rutherford H. Brett in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Williams and approved by Mr. George and Mr. Brett, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.