MOORE v. JEFFERSON et al.

No. 29292.   Jan. 13, 1942.

*120 P. 2d 983.*

J. S. Severson, of Tulsa, for plaintiff in error.

Joy G. Clayton and C. E. Baldwin, both of Tulsa, for defendants in error.

GIBSON, J. This appeal is from a judgment of the district court of Tulsa county affirming the order of the county court in the matter of the distribution and settlement of the estate and the determination of the heirs of a deceased allottee of the Creek Nation (Act of Congress, June 14, 1918, 40 Stat. at L. 606, 25 U.S.C.A. 355, 375).

The allottee aforesaid died in Tulsa county during the year 1930. Soon thereafter Nettie Jefferson, his widow, was appointed administratrix of his estate. The deceased's estate consisted of his restricted tribal allotment, which is the main subject of this controversy, and certain unrestricted assets. In due course the county court proceeded to make final distribution and settlement of the estate, and, as incident thereto, to determine the heirs of the decedent (secs. 1358–1361, O. S. 1931, 58 Okla. St. Ann. §§ 631–634). The heirs as named by the decree were Nettie Jefferson and two children, Ravella Jefferson and Willis Jefferson.

In the meantime plaintiff in error, Moore, had purchased the interests of Nettie Jefferson and Ravella Jefferson in the above-mentioned allotment, but the county court distributed the same to the heirs aforesaid in undivided interests of one-third to each heir, and failed to take into account the sale of the interests to Moore and to distribute the same to him as provided by section 1366, O. S. 1931, 58 Okla. St. Ann. § 644.

Notice of final settlement of estate and determination of heirs was given as provided by section 1361, O. S. 1931, 58 Okla. St. Ann. § 553, and the order determining heirs was not appealed. However, within six months Moore filed his petition of intervention (25 U.S.C.A. 375) whereby he sought to set aside the decree. The county court denied his petition, as also did the district court on appeal. The judgment of the district court is now here for review.

Moore says the decree of heirship and final distribution was void for the reason that he had no notice of the proceedings. He says further that the evidence fails to show that Willis Jefferson was an heir, and further that the decree assigning his own interests in the allotment to Nettie Jefferson and Ravella Jefferson was erroneous.

But Moore did have full statutory notice of the administration proceedings relating to final settlement and determination of heirs. Notice was given by publication to all parties interested as provided by said section 1361. Decree of heirship on statutory notice in such case binds all parties claiming an interest except those under legal disabil-

ity. National Exploration Co. v. Robins, 140 Okla. 260, 283 P. 236. And this applies to the heirs of any citizen of the Five Civilized Tribes where none of said heirs is restricted or, if restricted, had actual notice, and there exist assets subject to administration. Where unrestricted assets exist, the county court has jurisdiction to administer thereon under the general probate statutes, and, as incident thereto, to determine the heirs of the Indian to both his restricted and unrestricted estate, notwithstanding said heirs may be restricted. Hardridge v. Hardridge, 168 Okla. 7, 31 P. 2d 597. On failure to appeal, those heirs are bound by the decree as in other cases, except restricted heirs who have had no actual notice of the proceedings. 25 U.S.C.A. 375; In re Morrison's Estate, 187 Okla. 553, 104 P. 2d 437. The latter may appear within six months and receive a hearing. Id.

In the instant case the decree of the county court had become final for failure of an appeal in the time provided by law. But Moore asserts that under the act of Congress, supra, he was authorized to appear and contest the decree within six months from the date thereof. In this he is wrong. The heirs in the instant case were not restricted within the meaning of the act. It clearly applies only in cases where there are restricted heirs, and to none other. The following portion of the act sufficiently substantiates our statement. It reads as follows:

"A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the State of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: . . . and if any person so served by publication does not appear and move to be heard within six months from the date of the final order, he shall be concluded equally with parties personally served or voluntarily appearing."

In Washington v. Stover, 169 Okla. 143, 36 P. 2d 469, the court, referring to the Act of 1918, said:

"It is clear that Congress intended by the act in question to confer jurisdiction upon the county court to determine the question of fact as to who are the heirs under the following conditions:

"(1) The deceased must be a citizen allottee of one of the Five Civilized Tribes.

"(2) Such deceased allottee must leave restricted heirs.

"(3) The question of the determination of heirship shall not have theretofore been ascertained by competent legal authority under existing laws."

This supports our conclusion that the act does not apply here. The deceased was a full-blood Indian and his allotment therefore restricted, but none of his heirs was restricted within the meaning of the act. They were all much less than full-blood Indians.

This case does not fall within the rule announced in Green v. Campbell, 187 Okla. 54, 100 P. 2d 997, wherein the court, on authority of Glenn v. Lewis, 105 Fed. 2d (C.C.A.) 398, held in effect that by reason of the provisions of section 1, Act of Congress of Jan. 27, 1933, 47 Stat. 777, Indian heirs of the half blood were restricted Indians insofar as their inherited interest in tax-exempt land was concerned. Here the allottee died prior to the Act of 1933. Therefore, said act does not apply.

So far as the allotments of deceased citizens of the Five Civilized Tribes are concerned, federal restrictions or conditions on the alienation thereof by the heirs of less than full blood had long since expired prior to 1933. By the term "restricted heirs," as used in the Act of 1918, Congress could have had in mind only those heirs whose conveyances of inherited lands were yet subject to approval by the proper authority as designated in the Acts of Congress (Act of May 27, 1908, 35 Stat. at L. 312, and

amendments). Those heirs were Indians of the full blood. In the case In re Morrison's Estate, supra, the allottee died subsequent to the Act of 1933, and the parties prosecuted and defended the cause on the theory that the deceased left one or more restricted heirs and as if the federal act was applicable, and the court disposed of the case on that assumption.

Among the methods authorized by the Act of 1918 for determining the heirs of an Indian allottee who died leaving restricted heirs was the authority vested in the county court to determine the heirs as an incident to distribution and settlement of the estate of such allottees under the court's general probate jurisdiction. Where there were restricted heirs the probate court was authorized to determine heirship. Washington v. Stover, supra. But in any such case there must be some assets subject to administration in order for the county court to render a valid decree of heirship. The court must acquire jurisdiction of assets upon which its decree may operate. Hardridge v. Hardridge, supra.

There seems to be some doubt whether prior to the 1918 Act the county courts in the exercise of their general probate jurisdiction had power to determine who were the heirs to the restricted allotment of a deceased Indian in those cases where there were no restricted heirs. Such an allotment was not subject to the debts of the allottee, and was therefore not an asset in the hands of his administrator. Cowokochee v. Chapman, 90 Okla. 121, 215 P. 759. In that case the court held as follows:

"Restricted Indian lands are not subject to the payment of the debts of the deceased allottee, and for that reason are not assets of such deceased allottee's estate subject to administration, and a decree of the county court of Seminole county entered in October, 1912, distributing such lands is not conclusive as to the heirs entitled to inherit such lands. A probate court in distributing the estate of a deceased person has no jurisdiction to distribute any estate other than the assets of the estate subject to administration, and a decree dis-

tributing estate over which the court has no jurisdiction is a nullity."

There the court seems to have been of the opinion that the county court could in no case decree heirship to any kind of property which was not subject to the debts of the deceased, whether it be the restricted property of Indians or property of the ordinary citizen. But it has long been settled that a determination of heirship made on final distribution of an estate is conclusive as to the interests of heirs in that portion of the estate not subject to the debts of the deceased. This rule has been applied to the probate homestead. Pennington v. Woodner-McCaugh, 54 Okla. 110, 153 P. 875; Wares v. Knabe, 84 Okla. 66, 202 P. 774; Randel v. Heckman, 114 Okla. 190, 245 P. 589; Ward v. Cook, 152 Okla. 234, 3 P. 2d 728. If there are assets subject to debts, the court acquires jurisdiction to determine who are the heirs to all the estate, including the portion not subject to administration.

Prior to the Act of 1918 county courts were thought not to have jurisdiction to determine heirship to restricted allotments even in those cases where there were assets subject to administration. This was probably true in all such cases where the deceased allottee left restricted heirs. By the act aforesaid Congress placed the latter cases within the general probate jurisdiction of the county court, permitting determination of heirship to allotments on final distribution where there were any restricted heirs. But the act makes no reference to cases where none of the heirs was restricted.

There was ample reason for this omission. Unrestricted heirs were no longer subject to government supervision in matters pertaining to their inheritance or the alienation of their inherited tribal lands. Consequently, Congress confined its legislation to those cases where the interests of restricted heirs would be affected by the court's decree.

In our opinion the county court has always had power under its general probate jurisdiction to determine heir-

ship to restricted allotments of deceased allottees where there were no restricted heirs and where the court had acquired jurisdiction of unrestricted assets of the deceased allottee. Congress was undoubtedly of the same opinion or it would not have confined the act to those cases where restricted heirs were involved.

In the case In re Thompson's Estate, 179 Okla. 240, 65 P. 2d 442, 446, we made the statement to the effect that Congress, prior to the Act of 1918, had not authorized the county courts to determine the heirs to whom restricted allotments of deceased citizens of the Five Civilized Tribes should descend. In this statement we had reference to cases where there were restricted heirs.

The rule stated in the Thompson Case, above, though the restricted allotment of a citizen of the Five Civilized Tribes was not involved, well applies here. It reads as follows:

"A decree of the county court determining heirs of an intestate rendered as incident to final settlement of the estate, unless appealed from, is conclusive of that question and binding alike as to the property of deceased subject to payment of debts and property not subject to such debts."

And, as to notice of the proceedings, the rule announced in National Exploration Co. v. Robins, supra, is controlling. It reads as follows:

"Probate proceedings in the settlement of estates are in the nature of proceedings in rem, and, upon statutory notice having been given, all the world is charged with notice. And a decree of distribution and settlement of heirship rendered on such notice, in the absence of a showing of fraud or collusion, is binding on all parties claiming an interest in the estate even though not mentioned in the proceedings nor personally served with notice. Minor heirs, however, not represented, may proceed in the proper tribunal to set the same aside within one year after arriving at the age of majority, as provided by section 684, C.O.S. 1921."

Therefore, we must hold that Moore was bound by the notice given pursuant to section 1361, supra, and that the decree had become final.

Judgment affirmed.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., absent.